UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>Plaintiff,<br><br>v.<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES,<br><br>Defendant. | Civil Action No. 1:16-cv-01987 |

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

### Preliminary Statement

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the release of agency records related to the federal government's award of Trafficking Victim Protection Act ("TVPA") funds to the U.S. Conference of Catholic Bishops ("USCCB").

2. It is estimated that more than 14,000 individuals are trafficked into the United States each year. Human trafficking is a form of modern-day slavery, in which individuals are recruited or obtained and then made to labor against their will through force, fraud, or coercion. Many women who are trafficked are raped by traffickers or acquaintances of traffickers. Some women who have been trafficked become pregnant after being raped.

3. Congress passed the TVPA to combat human trafficking and expand benefits and services for those who are victims of severe forms of human trafficking. Under the

TVPA, Defendant Administration for Children and Families ("Defendant" or "ACF") provides an array of services to these individuals, including medical services, to help them become self-sufficient. In 2006, Defendant provided a multi-year, multi-million dollar contract to USCCB to distribute as subcontracts to organizations that directly serve trafficked individuals. In that contract, Defendant permitted USCCB to prohibit all subcontractors from using federal funds to pay for abortion and contraception services and referrals, based solely on USCCB's religious beliefs.

4.  Denying reproductive health services, and referrals for these services, can further victimize trafficked individuals. Victims of severe forms of human trafficking frequently need reproductive health care services and referrals to lead safe lives, become self-sufficient, and protect themselves and others. These services, and referrals to these services, include emergency contraception, condoms, and in some cases abortion.

5.  In 2009, the ACLU filed a lawsuit alleging that Defendant violated the Establishment Clause by permitting USCCB to impose its religiously based restrictions on the types of services trafficked individuals can receive with taxpayer funds. The suit was based in part on documents received by the ACLU in response to a previous FOIA request.

6.  In 2012, a federal district court ruled in favor of the ACLU, and held that Defendant's contract with USCCB violated the Establishment Clause. On appeal from the district court's decision, Defendant successfully argued that the case had become moot because it was no longer contracting with USCCB to provide services to trafficking victims.

7. Last year, however, Defendant again awarded a grant to USCCB to provide services to trafficking victims.

8. Plaintiff American Civil Liberties Union ("ACLU") has therefore sought information about the terms under which USCCB has been allowed to resume its participation in the TVPA program. On November 13, 2015, Plaintiff requested documents under the FOIA from Defendant.

9. Plaintiff is legally entitled to these documents, which were requested approximately three months ago. Defendant has far exceeded the statutory and regulatory time limitations to respond, and has provided no documents or response.

10. It is crucial that the requested documents are disclosed as soon as possible, so the public may determine whether Defendant has once again authorized USCCB to impose its religious beliefs on a vulnerable population that needs access to critical reproductive health services. Accordingly, this Court should order Defendant to provide the requested records to Plaintiff immediately.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

12. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff's principal place of business is in New York.

## Parties

13. Plaintiff ACLU is a non-profit organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. The ACLU has filed multiple FOIA requests pertaining to the government's policies. The ACLU is a nationwide, non-profit, non-partisan organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality.

14. Defendant ACF, a subdivision of the U.S. Department of Health and Human Services ("HHS"), is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## Defendant's 2006 Contract with USCCB

15. In 2006, the Office of Refugee Resettlement ("ORR"), a subdivision of ACF, contracted with USCCB, a religious organization whose membership consists of the Catholic bishops in the United States, to provide services to trafficking victims in the United States.

16. USCCB's proposal for the contract stated, among other things, that "as we are a Catholic organization, we need to ensure that our victim services funds are not used to refer or fund activities that would be contrary to our moral convictions and religious beliefs. Therefore, we would explain to potential subcontractors our disclaimer of the parameters within which we work. Specifically, subcontractors could not provide or refer for abortion services or contraceptive materials . . . ."

17. The contract between USCCB and ORR lasted for five and a half years, and during that time ORR awarded USCCB more than $15.9 million. USCCB kept over $5.3 million of these funds, roughly one third the total amount, for administrative services and expenses.

18.     The Freedom Network—a national coalition of anti-trafficking organizations—raised concerns about the contract, stating: "[T]rafficked persons interested in avoiding sexually transmitted diseases and pregnancy often approach social services agencies for contraception and referrals. Moreover, trafficked persons who have been raped by their traffickers often approach social service providers for information regarding abortion services."

19.     The American Civil Liberties Union of Massachusetts ("ACLU of Massachusetts") filed a lawsuit in the U.S. District Court for the District of Massachusetts, alleging that ORR's contract with USCCB violated the Establishment Clause of the First Amendment.

20.     The district court ruled that the government violated the Establishment Clause "insofar as they delegated authority to a religious organization to impose religiously based restrictions on the expenditure of taxpayer funds, and thereby impliedly endorsed the religious beliefs of the USCCB and the Catholic Church."

21.     During the course of litigation, ORR issued a new Funding Opportunity Announcement ("FOA"), which made clear that trafficking victims need reproductive health services and referrals. ORR selected three organizations to receive grants under the new FOA that would provide those reproductive health services and referrals. USCCB was not among the recipients.

22.      On appeal, ORR maintained that the expiration of its contract with USCCB rendered the case moot, in part because "it is completely speculative whether USCCB will receive any future contract award similar to the one plaintiff challenges here." The U.S. Court of Appeals for the First Circuit accepted this argument, concluding that "we

can safely assume that for the foreseeable future the challenged contract terms will not recur." The court gave particular weight "to the fact that the defendants are high-ranking federal officials, including a cabinet member, who have, as a matter of policy, abandoned the prior practice and adopted a concededly constitutional replacement."

### **Defendant's 2015 Grant to USCCB**

23. In 2015, ORR issued a new Funding Opportunity Announcement, HHS-2015-ACF-ORR-ZV-0976, stating that "it will accept competing applications for cooperative agreements to administer the Trafficking Victim Assistance Program (TVAP)."

24. The FOA explicitly addressed potential religious objections to the Trafficking Victim Assistance Program's service and referral requirements. It states: "If an organization has a religious objection to providing any of the services or referrals required in the program, it may propose an approach to meeting its grant obligations consistent with ACF's faith-based policy. The alternative approach must be one that accomplishes the goal of ensuring that trafficking victims understand the full range of services available to them, including reproductive health services, and that there is a mechanism by which victims requesting such services can receive appropriate referrals. If an alternative approach is proposed, ORR will decide whether to accept the alternative approach, based upon a determination of whether the alternative approach will ensure timely referrals to all services and/or referrals for which the individual is eligible, is not burdensome to the client, and is operationally feasible for ACF."

25. USCCB received a $2 million dollar grant in September 2015. USCCB has announced that it is "providing comprehensive case management, through [its] network of direct service providers, to foreign born victims of trafficking and derivative family

members as part of the Trafficking Victim Assistance Program." In its announcement, USCCB stated that it will serve HHS Regions 3 and 6, which include: Arkansas, Delaware, the District of Columbia, Louisiana, Maryland, New Mexico, Oklahoma, Pennsylvania, Texas, Virginia, and West Virginia. USCCB also indicated that it is "able to serve victims of trafficking 'anytime, anywhere' through [its] national per capita service reimbursement mechanism."

### The FOIA Request and the Agency's Response

26. On November 13, 2015, Plaintiff filed a FOIA request with Defendant seeking, among other things, release of any and all materials related to USCCB's application and final award for Funding Opportunity Number HHS-2015-ACF-ORR-ZV-0976, including but not limited to USCCB's application for the grant, materials sent by USCCB or any ACF entity seeking clarification or asking for further information about the grant, the final award, and any materials related to the implementation of the grant as it pertains to medical care, including abortion or contraception. *See* Ex. A.

27. On December 3, 2015, Plaintiff received an email from Defendant officially acknowledging receipt of the request and designating it Request Number 16-0255.

28. Plaintiff has received no further communications or documents regarding this request.

29. Defendant has failed to comply with the time limits imposed by the FOIA statute and Defendant's regulations.

30. Under the FOIA statute, an agency must determine whether to comply with the request within 20 days (excluding weekends and legal holidays) after receiving it. 5

U.S.C. § 552 (a)(6)(A)(i). That time limit can be shortened to 10 days, if the requestor demonstrates a compelling need for the documents. *Id*. § 552 (a)(6)(E).

31.     Under HHS regulations, HHS is to decide whether to release records within 10 working days, and must provide the records as soon as possible after that decision. 45 C.F.R. § 5.35(b)(1).

32.     Given that HHS voluntarily shortens the deadline for responding to requests to match the statutory framework for expedited requests, Plaintiff did not ask for expedited processing here.

33.     If HHS fails to "meet the deadline[], [the requester] may proceed as if [it] had denied [the] request." *Id*. § 5.35(a).

34.     Plaintiff therefore has instituted this action to ask the Court to order Defendant to disclose the requested documents.

### **Plaintiff's Entitlement to a Waiver of or Reduced Processing Fees**

35.     Plaintiff also asked for a waiver or reduction of document search, review, and duplication fees because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 45 C.F.R. § 5.45(a).

36.     The records sought in the instant request will significantly contribute to the public understanding of the operations and activities of HHS and its grantees. In addition, disclosure is not in Plaintiff's commercial interest. Plaintiff will evaluate the disclosed documents and, depending on what is contained in the documents, may well disseminate the information to the public. If Plaintiff publicly discloses information obtained through the FOIA, it will do so at no cost to the public. *See* Ex. A.

37. Plaintiff is also entitled to a waiver or reduction of fees because it qualifies as a "representative of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 45 C.F.R. § 5.45(b)(3).

38. Plaintiff is a representative of the news media for the purposes of FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.

39. Plaintiff does not seek the requested information for commercial reasons. Plaintiff summarizes, explains, and disseminates the information it gathers through FOIA requests at no cost to the public.

## Causes of Action

40. Plaintiff repeats and realleges paragraphs 1-39.

41. Defendant's failure to timely make available the records sought by Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and Defendant's corresponding regulation, 45 C.F.R. § 5.35(b)(1).

42. Defendant's failure to grant Plaintiff's request for a waiver or reduction of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A), and Defendant's corresponding regulation, 45 C.F.R. § 5.45.

43. Defendant's failure to grant Plaintiff's requests for a waiver or reduction of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A), and Defendant's corresponding regulation, 45 C.F.R. § 5.45(b).

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

1. Order Defendant to immediately process all documents requested in Exhibit A;

2. Order Defendant to conduct a thorough search for all responsive records;

3. Order Defendant to promptly disclose the requested records in their entirety, and make copies available to Plaintiff;

4. Enjoin Defendant from charging Plaintiff fees for the processing of its request;

5. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

6. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Brigitte Amiri (BA-8497)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-549-2633
Fax: 212-549-2652

Daniel Mach*
American Civil Liberties Union Foundation
915 15th Street, 6th Floor
Washington, DC 20005
Phone: (202) 675-2330
Fax: (202) 546-0738


*motion for *pro hac vice* to be filed

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the Amended Complaint and Exhibit A has been furnished by electronic mail on this 29th day of March, 2016 upon:

Elizabeth Tulis
United States Attorney's Office
86 Chamber Street, Third Floor
New York, NY 10007
Elizabeth.Tulis@usdoj.gov

*Counsel for Defendants*

Dated: March 29, 2016

                                                            /s/ Brigitte Amiri